# �export �export

## Richmond.

### ADAMS, TREASURER, v. WALKER & Co.

### December 4, 1902.

1. REAL ESTATE AUCTIONEERS—*Taxes*—*Assessment.*—Under the provisions of sec. 50, chap. 244, Acts 1889-'90, real estate auctioneers are liable to a tax of one-fourth of one *per cent.* of the amounts of their sales, in addition to the specific tax, and the method of ascertaining the amount of such sales is pointed out by section 44 of the same act, which requires each of such auctioneers to keep an account of sales made by him, and, whenever required by a commissioner of the revenue, to "render an account for assessment of all his sales," under oath. Such was the object of section 44, and effect must be given to it, notwithstanding section 50 declares that the amount of sales shall be "ascertained and charged as is provided in case of liquor merchants"—a method extinct at the time chapter 244 was enacted.

Appeal from a decree of the Corporation Court of the city of Lynchburg, rendered May 13, 1902, in a suit in chancery, wherein the appellee, doing business as J. Stewart Walker & Co., was the complainant, and the appellant was the defendant. The appellant, as treasurer of the city of Lynchburg, levied on personal property of the appellee to satisfy the taxes claimed of him, and he sued out an injunction to restrain the sale.

*Reversed.*

The opinion states the case.

*Attorney-General William A. Anderson* and *R. D. Yancey,* for the appellant.

*Wilson & Manson* and *Blackford, Horsley & Blackford,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

The questions involved in this case are:

(1) Whether at the time the tax complained of was assessed, the revenue laws of the State imposed a tax of one-fourth of one *per cent.* on the amount of sales of real estate auctioneers; and,

(2) If imposed, whether these laws provided a method for its assessment.

Section 50, chapter 244, of the Acts of 1889-90, provides that "A real estate auctioneer shall pay for the privilege the sum of fifty dollars; and if the place of business is in a city of more than five thousand inhabitants, one hundred dollars; and he shall pay an additional sum of one-fourth of one *per centum* upon the amount of sales to be ascertained and charged as is provided in the case of liquor merchants; . . ."

Language imposing the tax could not be clearer and more emphatic. It declares that for the privilege of doing the business of a real estate auctioneer he shall pay a specific tax, and *"he shall pay* an additional tax of one-fourth of one *per centum* upon the amount of sales," &c. Neither is there anything in section 49, or any other part of the chapter which leaves in doubt the intention of the Legislature as declared in section 50 to impose the tax in question.

The next question is, was the requisite machinery provided by law for its assessment?

Section 50 provides that such auctioneer "shall pay the *per centum* tax" upon the amount of sales to be ascertained and charged as is provided in the case of liquor merchants. It seems that for some years prior to the Acts of 1883-'4 a *per centum* tax had been imposed upon the sale of liquor merchants, and a method provided for ascertaining and charging that tax.

Since the Acts of 1883-'4 went into effect, it seems that no *per centum* tax has been imposed upon liquor merchants, and of course no method for ascertaining and charging such tax was provided. But notwithstanding this change in the law, the subsequent statutes imposing a *per centum* tax upon general auctioneers and real estate auctioneers continue to refer to that non-existing method of ascertaining and charging a *per centum* tax on the sales of liquor merchants as if it were still in force. If that were the only method provided for assessing the tax in question, it could not be collected, however clearly imposed. But section 44 of the chapter imposing the tax provides that "an auctioneer shall keep an account of sales made by him other than those made under section 45, showing the aggregate amount thereof, and, whenever required by a commissioner of the revenue, shall render an account for assessment of all his sales for the period required by law to be stated, and shall sign and answer all such interrogatories respecting such sales as may be propounded to him in pursuance of law. Such accounts, statements, and answers shall always be on oath." From the character of the duties imposed upon an auctioneer by this section, it is manifest that it was a means provided by law by which the commissioner of the revenue could ascertain the facts necessary to assess the tax in question. Not only is this so, but the section expressly declares that such auctioneer "shall render an account for assessment of his sales." If it were not enacted for the purpose of enabling the commissioner of the revenue to make the assessment, for what purpose was it enacted, and of what value or use is it in the chapter? That section must, if possible, be given some effect in the construction and enforcement of our revenue laws. The construction placed upon it is clearly justified by its language. If that construction is not placed upon it, the *per centum* tax clearly imposed fails, the section is given no effect, and the manifest intention of the Legislature is defeated.

We are of opinion that the tax complained of was imposed by law, and ample machinery provided for its assessment, and that the Corporation Court erred in not so decreeing.

Its decree will, therefore, be reversed, and this court will enter such decree as it ought to have entered.

*Reversed.*